## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 18-14494-CIV-MIDDLEBROOKS/MAYNARD

PAUL T. MCNAMEE,

     **Petitioner,**

v.

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

     **Respondent.**

_____/

### REPORT AND RECOMMENDATION ON PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS (DE 1)

     **THIS CAUSE** comes before this Court upon an Order of Reference (DE 10) and the above Petition.  The record before this Court consists of the Petition and Memorandum of Law in Support (DE 1), Response (DE 12), Appendix (DE 13), and Reply (DE 17).  Having reviewed the record, this Court recommends as follows:

### INTRODUCTION

     Petitioner Paul McNamee ("Petitioner"), a state prisoner at Okeechobee Correctional Institution, filed a Petition for Writ of Habeas Corpus under 42 U.S.C. § 2254 challenging his convictions in the Nineteenth Judicial Circuit Court in and for St. Lucie County, Florida.  Petitioner was charged with the murders of Thomas Greco and Eliuvar Vega in Port St. Lucie, Florida on October 5, 2001.  At the time, Petitioner was only sixteen years old.  Petitioner was charged in a five-count indictment.  Counts 1 and 2 charged first degree murder, Count 3 charged robbery with a firearm, Count 4 charged armed burglary of a dwelling and Count 5 charged grand theft of a firearm.  Counts 4 and 5 stemmed from the theft of the murder weapon from a residence prior to October 5, 2001.  DE 13-1.

Petitioner went to trial on July 7, 2003.  On July 17, 2003, a jury found Petitioner guilty of all counts.  DE 13-2.  On August 6, 2003, Petitioner was sentenced to life imprisonment on Counts 1 through 4, and five years' imprisonment on Count 5.  DE 13-3.

Petitioner's Section 2254 Petition asks the District Court to vacate his judgment and sentence for the following reasons: (1) trial counsel was ineffective in handling Petitioner's motion to suppress,  particularly for (a) failing to move to suppress Petitioner's statements based on constitutionally inadequate *Miranda* warnings, (b) failing to move to suppress based on law enforcement's questioning of Petitioner after he asked to leave the interrogation, (c) failing to advise Petitioner of his right to testify at the suppression hearing, and (d) failing to show the video recordings of Petitioner's statements to the jury in their entireties; (2) trial counsel was ineffective for failing to obtain a blood spatter expert; and (3) trial counsel was ineffective based on cumulative error.

## BACKGROUND[1]

At approximately 4:00 p.m. on Friday, October 5, 2001, Port St. Lucie Police Department officers responded to the scene of a double homicide.  The victims, twenty-seven year old Eliuvar Vega and fifteen year old Thomas Greco, were seated in the front seats of a parked car.  Both had been shot multiple times from behind at close range.  Officers were able to identify Thomas Greco from a Port St. Lucie High School identification card in his possession.  They were able to identify Eliuvar Vega by running the license plate on the car.  Detectives found a cell phone in the center console and reviewed the most recent calls.  One of those recent calls was to Petitioner's phone number.

---

[1] The recitation of facts contained herein is largely taken from the written decision of Florida's Fourth District Court of Appeal on direct appeal  (DE 13-4) and the trial court's oral order on Petitioner's motions to suppress (DE 14-6 at 81-110).

An eyewitness reported hearing a gun shot and seeing someone run from the scene holding something at his side.  The fleeing person was described as a white or Hispanic male of average size and thin build wearing a striped shirt.  The witness helped police develop a sketch of the person.

About thirty minutes after law enforcement arrived on the scene, another car was stopped by police six or seven blocks away from the crime scene.  Petitioner was a passenger in that car.  Police questioned the vehicle's occupants before allowing them to leave.

The police sketch aired on the evening news.  A student from Port St. Lucie High School contacted police and said the sketch resembled Petitioner.  Detectives obtained Petitioner's driver's license photograph and some commented that he looked like the composite sketch.  Another witness told police Petitioner had been involved in a drug deal with the victims.  Someone else reported that a large sum of money was missing from one of the victim's homes and he may have had that money in his possession at the time of the murders.  Someone else reported Petitioner had previously said he was going to steal Goldschlager liquor and a gun from a neighbor's residence.

School resource officers at Port St. Lucie High School became involved in the case.  One officer remembered Petitioner had been wearing a striped shirt at school on the day of the murders.  He reviewed the school's surveillance tape, which showed Petitioner at school on the day of the murders wearing clothing similar to that described by the eyewitness.

As Friday, October 5th turned into Saturday, October 6th, police went to Petitioner's house at approximately 1:30 a.m.  Petitioner's father answered the door and called Petitioner to talk to the police.  Petitioner declined to be interviewed at that time because he was tired but agreed to come to the police station later that day.  Petitioner arrived at the police station in the afternoon on

Saturday, October 6th.  He spoke to the lead detective, Teresa Dennis, who did not inform him of *Miranda* rights at that time.[2]  Petitioner left the station after the interview.

When Petitioner left, law enforcement placed him under surveillance.  They followed him home and watched him walk to a neighbor's house.  After Petitioner left the neighbor's house, the neighbor called the police and said Petitioner had asked to access the river behind the neighbor's property in order to dispose of a gun.  The neighbor saw Petitioner throw a gun into the river.

Police obtained a warrant to search Petitioner's house.  The warrant was executed on the evening of Saturday, October 6th.  Officers saw a shirt in Petitioner's closet that resembled the one Petitioner wore to school on Friday.  They did not seize it at that time because they did not perceive as an exact match.  Officers returned to the house the following week with a new search warrant to seize the shirt. Forensic analysis revealed that the shirt had a spot of victim Thomas Greco's blood on it.

While at Petitioner's house executing the search warrant, law enforcement spoke with Petitioner again.  Det. Dennis read Petitioner his *Miranda* warnings from a card. Petitioner stated that they might find a large sum of money in his bedroom.  Law enforcement spoke to Petitioner's mother, who said Petitioner had given her $700 on the day of the murders.  After the search, Petitioner voluntarily returned to the police station for another interview on Saturday evening. Det. Dennis advised Petitioner of  his *Miranda* rights again.  Petitioner waived his rights and agreed to speak to law enforcement.  After the interview concluded, Det. Dennis talked to Petitioner's mother in the lobby of the police station.  Det. Dennis and Petitioner's mother disagree about what was said during that conversation.  Petitioner's mother says she mentioned getting her son an

---

[2] In ruling on the motion to suppress, the trial court found that Det. Dennis gave *Miranda* warnings to Petitioner before his first interview at the police station on October 6, 2001.  (DE 14-6 at 92).  That finding is contradicted, however, by Det. Dennis' testimony at the motion to suppress hearing.  (DE 14-4 at 80).

attorney, but Det. Dennis says she never said anything about obtaining a lawyer for her son. Regardless, Petitioner was allowed to leave the police station with his mother that evening.

Meanwhile Petitioner's neighbor showed police where Petitioner threw the gun into the river. Divers retrieved the gun along with a bottle of Goldschlager liquor from the river. Police determined that both had been stolen during a recent burglary of a nearby home. Ballistics testing eventually confirmed that the gun pulled from the river was the firearm used in the October 5, 2001 double homicide. Another witness said earlier in the week Petitioner had tried to sell him a gun similar to the one recovered from the river.

On Sunday afternoon, October 7, 2001, Petitioner returned to the police station for another interview. Petitioner was advised of his *Miranda* rights ahead of the interview and waived those rights. Police interviewed Petitioner for approximately eight hours. During the interview, Petitioner admitted having the gun in his possession but consistently denied committing the burglary or the shooting. Petitioner's mother arrived at the police station at approximately 2:30 p.m. She asked to speak to the lead detective and waited in the lobby, but the detective did not come out. At approximately 10:00 p.m., detectives came to the lobby and told Petitioner's mother her son would not be released because he was being formally charged. They advised her that Petitioner would call her, which he did several hours later.

At some point during Petitioner's interrogation on Sunday, October 7th, Detective Michael Beath entered the interrogation room with a Bible. Detective Beath told Petitioner "they say you are religious," and they began to talk about the Bible. Petitioner asked Det. Beath to read a passage from the Bible, and Det. Beath complied. Det. Beath said "the truth will set you free," and told Petitioner parental love and God's love were unconditional. Petitioner began to cry. Eventually

Petitioner admitted stealing the gun and said he had "killed two people."[3] DE 14-10 at 41.  He said he was in a "blackout" at the time.  Petitioner then asked if the conversation was confidential.  Det. Beath responded that he would have to write a report about what Petitioner said.  Petitioner responded by again denying the shooting.  He said he was taking the "rap" for someone else. Detective Beath did not let Petitioner speak further on that topic.

Petitioner was charged by indictment and Assistant Public Defender Russell "Rusty" Akins served as Petitioner's defense attorney.  Mr. Akins supervisor, Mark Harllee, assisted with in-court proceedings but did not personally provide any legal advice to Petitioner.[4]  Mr. Akins filed two motions to suppress and an evidentiary hearing was held on the motions on January 27, 2003, March 14, 2003, April 11, 2003 and May 14, 2003.  (DE 14-2; 14-3; 14-4; 14-5; 14-6).  In the first motion, counsel argued that the traffic stop of the vehicle Petitioner was in on the day of the murders was illegal and evidence derived therefrom should be suppressed.  In the second motion, counsel argued that Petitioner's statements to law enforcement on October 6 and 7, 2001 were involuntary.  The trial court denied both motions.

Petitioner's trial began on July 7, 2003.  (DE 14-1).  At trial, Petitioner testified concerning his gang affiliation, gang-related drug sales, and his drug use.  He told the jury he brokered a drug deal with the victims that was supposed to happen on the day of the murders.  The victims picked him up in their car and another individual with initials J.B. was present as well.  Petitioner said he

---

[3] When the detective asked Petitioner what happened on the day of the murders, Petitioner's answer to that question is inaudible in recordings of the interview.  The detective responds by saying, "All right. You told me you did it." On cross-examination, the detective conceded that the recording is unclear to what the Petitioner was admitting.  DE 14-10 at 66-67.

[4] Well after the criminal case, in August 2014, the Florida Bar suspended Mr. Akins' license to practice law. DE 13-21 at 14 n.8. In 2013, the Florida Bar also admonished Mr. Harllee.  There is no indication that the disciplinary actions taken by the Florida Bar against Mr. Akins or Mr. Harllee relate to Petitioner's case or otherwise support, either directly or indirectly, Petitioner's ineffective assistance of counsel claims.

was in the car during the murders but was not the shooter.  Petitioner claimed J.B. pulled out a gun during the drug transaction and shot the two victims.  Petitioner said J.B. had purchased the gun from Petitioner.  When J.B. shot the victims, Petitioner jumped out of the car and ran.  Petitioner said J.B. came to his house after the shooting and paid Petitioner to get rid of the gun.  Petitioner took the "rap" for J.B. because he was afraid of him.

The jury convicted Petitioner of all five counts.  Petitioner was sentenced to life in prison without parole on Counts 1 through 4, and five years in prison on Count 5.  (DE 13-3).

Petitioner appealed to Florida's Fourth District Court of Appeal.  (DE 13-4).  He challenged the legality of the traffic stop and subsequent questioning of the vehicle's occupants.  He also challenged the admission of his statements to police, arguing that the statements were involuntary because he was not allowed to speak with his parents and law enforcement used coercive measures based on religion.  He also challenged the late production of the video recordings, the fact that the transcripts were prepared by the detectives themselves, the fact that the detective was allowed to testify about inaudible portions of the recordings, and his lawyer's failure to make proper use of the recordings and transcripts.  The Fourth District Court of Appeal issued a written opinion on June 29, 2005 finding no reversible error.  (DE 13-7).  A Mandate issued on September 2, 2005. (DE 13-11).

On September 1, 2006, Petitioner sought post-conviction relief under Florida Rule of Criminal Procedure 3.850, challenging his conviction and sentence on the basis of ineffective assistance of counsel.  (DE 13-12).  Robert Udell, Esq., represented the Petitioner on direct appeal and at the start of the state post-conviction court proceeding.[5]  In December 2009, Nellie K. King,

---

[5] The Florida Bar permanently disbarred Mr. Udell in 2009 (during Plaintiff's state post-conviction court proceeding). DE 13-21 at 14 n.8.  There is no indication in the record that the disciplinary action taken by the Florida Bar against

Esq., took over Petitioner's representation for all post-conviction proceedings and remains Petitioner's counsel of record to-date.

Petitioner's 3.850 motion was handled by three different judges over the course of several years.  The motion was initially assigned to Judge James McCann.  (DE 13-2).  On April 16, 2007, Judge McCann issued an Order Denying in Part Motion for Post-Conviction Relief, Granting in Part Evidentiary Hearing, and Setting Status Conference.  (DE 13-15).  Petitioner filed motions for leave to amend his 3.850 motion and for reconsideration.  (DE 13-16).  On May 12, 2008, Judge Robert Belanger entered an Order Amending Judge McCann's Order, Denying in Part and Granting an Evidentiary Hearing in Part.  (DE 13-18).  An evidentiary hearing was held on the 3.850 motion before Judge Dan L. Vaughn on November 12, 2012.  (DE 14-1).  Judge Vaughn entered an Order on Defendant's 3.850 Evidentiary Hearing on October 13, 2015.  (DE 13-20).  Petitioner appealed the denial of his 3.850 motion to the Fourth District Court of Appeal.  (DE 13-21).  The State responded by pointing out that Judge Vaughn's Order (DE 13-20) failed to rule on two issues raised by Petitioner's 3.850 motion.  (DE 13-22).  The State moved to remand the case to the trial court for factual findings and conclusions of law on those two issues.  *Id*.  The Fourth District Court of Appeal granted the State's request and remanded to the trial court.  (DE 13-25).  Judge Vaughn entered an Amended Order addressing the two issues omitted from his previous Order on February 16, 2018 (DE 13-26).  After supplement briefing, the court affirmed the denial of Petitioner's 3.850 motion, *per curiam*, without written opinion.  (DE 13-30).  Rehearing was denied (DE 13-31) and the court issued its Mandate on December 14, 2018.  (DE 13-32).

---

Mr. Udell relates to the Petitioner's case or otherwise supports, either directly or indirectly, his ineffective assistance of counsel claims.

Petitioner filed the instant Petition for Writ of Habeas Corpus on December 3, 2018 arguing that his conviction and sentence were obtained in violation of the United States Constitution. Respondent concedes that the Petition is timely filed.

## EXHAUSTION

The exhaustion doctrine precludes a state prisoner from seeking federal habeas relief before he has fairly presented his constitutional claims in state court and exhausted available state court remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 844 (1999); Title 28 U.S.C. § 2254(b). Both the factual substance of a claim and the federal constitutional issue, itself, must have been expressly presented to the state court to achieve exhaustion for purposes of federal habeas corpus review. *Baldwin v. Reese*, 541 U.S. 27 (2004). A claim must be presented to the highest court of the state to satisfy the exhaustion requirement. *O'Sullivan*, 526 U.S. at 845. In a Florida non-capital case, this means the applicant must have presented his claims in a district court of appeal. *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995). Exhaustion may be accomplished on direct appeal. If not, in Florida, it may be accomplished by the pursuit of a Rule 3.850 motion and the appeal of its denial. *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979).

Following a review of the record, the undersigned finds that Petitioner has met the exhaustion requirement for all of his claims except one. He did not present to the state court his argument that trial counsel was ineffective for failing to watch all twenty hours of his videotaped interrogation in its entirety. As a result, that argument is not exhausted. Ultimately, however, the exhaustion question is moot as to this issue because as this Court explains below Petitioner would not prevail on its merits anyway. *Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011) (holding that a federal habeas court may "skip over" the procedural default issues and deny a claim on the merits).

## STANDARDS OF REVIEW

### A.  Standard Under the Antiterrorism and Effective Death Penalty Act

Petitioner's federal habeas petition is governed by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Title 28 U.S.C. § 2254(a) permits a federal court to issue "a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" if that custody is "in violation of the Constitution or laws or treaties of the United States."  The issuance of a writ is limited, however, by the purpose of AEDPA, which is "to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted).  The AEDPA establishes a formidable barrier to state prisoners seeking federal habeas relief because it is based on the principle that "state courts are adequate forums for the vindication of federal rights." *See Downs v. Sec'y, Fla. Dep't of Corrs.*, 738 F.3d 240, 256 (2013).

Section 2254 applies at the end of a greater course of judicial review.  Section 2254(d) assumes that the Petitioner already exhausted his claims using the state's post-conviction avenues of relief to obtain an adjudication on their merits.  The Eleventh Circuit directs the focus of inquiry to the <u>last</u> merits adjudication by the state court.  As applied to this case, that is the unwritten *per curiam affirmed* opinion that Florida's Fourth District Court of Appeal rendered to affirm the denial of Petitioner's rule 3.850 post-conviction motion (DE 13-30).  Even though the *per curiam affirmed* adjudication is unwritten and thus gives no explanatory basis, it still counts as a merits determination, and it still is entitled to deference. *See Reed v. Sec'y, Fla. Dep't of Corrs.*, 767 F.3d 1252, 1261 (11th Cir. 2014).

While the deference remains, the fact that the Fourth District Court of Appeal offered no reasons for the affirmance means the reviewing federal court must "look through" to the last adjudication that does provide a relevant rationale. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). As applied here, that means this Court looks through to the various orders issued by Judges McCann, Belanger and Vaughn denying thee various grounds asserted in Petitioner's Motion for Post-conviction Relief. This Court assumes that the appellate court adopted the reasoning and rationale of these orders. *Wilson*, 138 S. Ct. at 1192.

The next step in the analysis is to identify the legal basis that entitles the Petitioner to habeas corpus relief. That is, to identify the constitutional or federal law that was violated. Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.A. § 2254.

Thus, the first part of Section 2254(d)(1) asks whether the state court's denial was "contrary to … clearly established Federal law, as determined by the Supreme Court of the United States." *Id*. The phrase "clearly established Federal law" refers to the holdings, as opposed to the *dicta*, of the Supreme Court's opinions in existence when the state court decided the post-conviction claims. *See Downs*, 738 F.3d at 256-57 (adding that it includes a binding circuit court decision that says

whether the particular point in issue is clearly established Supreme Court precedent). For a claim based on the ineffective assistance of counsel, for example, the governing standard comes from the Supreme Court's seminal *Strickland v. Washington*, 466 U.S. 668 (1984) opinion. The phrase "contrary to" means that the state court decision contradicts the Supreme Court on a settled question of law or holds differently than the Supreme Court on a set of materially indistinguishable facts. *See Downs*, 738 F.3d at 257. A state court's decision can be contrary to the governing federal legal standard either in its result (the denial of relief) or in its reasoning.

The second part of Section 2254(d)(1) asks the reviewing federal court to determine whether the state court's denial "involved an unreasonable application of" clearly established federal law. An <u>unreasonable</u> application of federal law is not the same as a merely <u>incorrect</u> application of federal law. *See Downs*, 738 F.3d at 257. The standard tests whether the state court's application of the legal principle was objectively unreasonable in light of the record before the state court at the time. An objectively unreasonable application of federal law occurs when the state court identifies the correct legal rule but unreasonably applies, extends, or declines to extend it to the facts of the case. *See Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

Section 2254(d)(1) tests the legal correctness of the state court's decision, but it does so through a highly deferential lens. The degree of error must be substantial and beyond dispute. The state court's decision survives Section 2254(d)(1) review so long as some fair-minded jurists could agree with the state court, even if others might disagree. *See Downs*, 738 F.3d at 257.

While subsection (1) of Section 2254(d) tests the <u>legal</u> correctness of the state post-conviction court's denial of relief against controlling federal case law, subsection (2) of Section 2254(d) sets forth the standard by which a federal court reviews the state post-conviction court's findings of <u>fact</u>. Section 2254(d)(2) asks whether the state post-conviction court based its denial

"on an unreasonable determination of the facts" based on the evidence before it at the time.  As with the Section 2254(d)(1) legal analysis, a reviewing federal court is to consider the state court's findings of fact through a deferential lens. The state court's finding of fact is not unreasonable just because the reviewing federal court would have reached a different finding of fact on its own. So long as reasonable minds might disagree about the finding of fact, the state court's finding stands. *See Downs*, 738 F.3d at 257.  Indeed, the state court's fact determinations are presumed to be correct.  Section 2254(e)(1) places the burden on the Petitioner to rebut that "presumption of correctness by clear and convincing evidence."  Even if the state post-conviction court did make a factual error, its decision still should be affirmed if there is some alternative basis sufficient to support it.  *See Pineda v. Warden*, 802 F.3d 1198 (11th Cir. 2015).

Obviously then Section 2254(d) creates a standard of review that is highly deferential to the state court's denial of the claim.  The reviewing federal court must give the state post-conviction court the benefit of the doubt and construe its reasoning towards affirmance. *See Lynch v. Sec'y, Fla. Dep't of Corrs.*, 776 F.3d 1209 (11th Cir. 2015).  To warrant relief under Section 2254(d), the Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  This is the degree of error the Petitioner must show before this Court may override the state post-conviction court's decision and overturn the finality of the conviction and sentence.

## B.  Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them.  *Strickland*, 466 U.S. at 684-85.  Defendants in state court prosecutions have such right under the Fourteenth

Amendment. *Minton v. Sec'y, Dep't of Corrs.*, 271 F. App'x 916, 918 (11th Cir. 2008). When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt v. Titlow*, 571 U.S. 12, 18 (2013). Counsel is not ineffective for failing to raise non-meritorious issues. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001). Counsel is also not required to present every non-frivolous argument. *Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate: (1) that his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness; and (2) that he suffered prejudice as a result of that deficient performance. *Strickland*, 466 U.S. at 687-88.

To establish deficient performance, Petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *Id.* at 690; *see Cummings v. Sec'y for Dep't of Corrs.*, 588 F.3d 1331, 1356 (11th Cir. 2009) ("To establish deficient performance, a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place."). A court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*), *cert. den'd*, 531 U.S. 1204 (2001). There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel has in making tactical decisions. *Id.* at 1317. The test for ineffectiveness is not whether counsel could have done more; perfection is not

required.  Nor is the test whether the best criminal defense attorneys might have done more.  *Id.* at 1316.  Instead, to overcome the presumption that assistance was adequate, "a petitioner must 'establish that no competent counsel would have taken the action that his counsel did take.'" *Hittson*, 759 F.3d at 1263 (quoting *Chandler*, 218 F.3d 1305 at 1315).

Regarding the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  *Id.*  A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs.  *Id.* at 697.

Further, a federal court reviewing a state post-conviction court's determination does not apply *Strickland de novo*, "but rather, through the additional prism of [Section 2254(d)] deference."  *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1126 (11th Cir. 2012).  "Thus, under this doubly deferential standard, the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  And if, at a minimum, fair-minded jurists could disagree about the correctness of the state court's decision, the state court's application of *Strickland* was not unreasonable and [Section 2254(d)] precludes the grant of habeas relief."  *Id.* (internal citation omitted); *but see Evans v. Sec'y, Dep't of Corrs.*, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (*en banc*) (Jordan, J., concurring) (explaining that double deference to a state court's adjudication of a *Strickland* claim applies only to *Strickland's* performance prong, not to the prejudice inquiry).  "This 'double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'"  *Id.*  (quoting *Evans v. Sec'y, DOC, FL*, 699 F.3d 1249, 1268 (11th Cir. 2012)).

**<u>DISCUSSION</u>**

Petitioner raises three claims for relief:

I.     Petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel when trial counsel unreasonably failed to challenge all legal grounds for suppression of his pre-trial statements and for failing to argue that the statements were not voluntary before the jury.  (DE 1 at 12).

II.    Trial counsel rendered ineffective assistance of counsel by failing to obtain a blood spatter expert.  (DE 1 at 37).

III.   Trial counsel rendered ineffective assistance of counsel based on the cumulative effects of counsel's errors, which deprived petitioner of his federal constitutional rights to due process of law and a fair trial.  (DE 1 at 39).

After reviewing the pleadings and evidence of record, for the reasons stated herein, this Court recommends that the Petition be denied.

***Claim I***

Claim I contends that counsel was ineffective for failing to raise all legal grounds to suppress Petitioner's pre-trial statements to law enforcement.  Claim I contains four sub-claims:

I(A).   Trial counsel rendered ineffective assistance of counsel by failing to file a motion to suppress Petitioner's statements to law enforcement based on constitutionally inadequate *Miranda* warnings.  (DE 1 at 13).

I(B).   Trial counsel rendered ineffective assistance of counsel for failing to file a motion to suppress Petitioner's statements based upon a violation of Petitioner's right to remain silent after law enforcement continually interrogated petitioner despite Petitioner's numerous requests to leave the interrogation.  (DE 1 at 15).

I(C).   Trial counsel rendered ineffective assistance of counsel for failing to advise Petitioner of his right to testify at the pre-trial motion to suppress hearing and thereafter call Petitioner as a witness.  (DE 1 at 27).

I(D).   Trial counsel rendered ineffective assistance of counsel for failing to have the videotape of Petitioner's statements presented as

evidence and published to the jury in its entirety pursuant to Florida
Evidence Code § 90.108.  (DE 1 at 32).

As a preliminary matter, the undersigned notes that this is not a case where Mr. Akins failed
to file a motion to suppress.  Indeed, Mr. Akins filed two motions to suppress, each of which
contained arguments on multiple issues.  The first motion to suppress argued that on the day of the
murders police unlawfully stopped a vehicle Petitioner was a passenger in and illegally questioned
the vehicle's occupants.  Evidence obtained during the stop was inadmissible, the motion argued,
and evidence developed by law enforcement after the stop was also inadmissible because it was
"fruits of the poisonous tree."  The second motion to suppress asserted that statements Petitioner
gave at the police station were involuntarily due to inadequate parental notification and Det.
Beath's use of religious coercion.  After four days of testimony, eight witnesses, review of
recordings and transcripts, and extensive arguments from both sides, the trial court denied both
motions.

Claim I asserts that in addition to the arguments he made, Mr. Akins should also have
challenged the *Miranda* warnings given to Petitioner and the failure of law enforcement to stop
questioning Petitioner after Petitioner said he wanted to leave.  Petitioner has failed, however, to
show Mr. Akins gave ineffective assistance at the motion to suppress phase of this case.  Mr. Akins
thoroughly investigated law enforcement's handling of the case from its inception as well as the
circumstances surrounding Petitioner's statements to law enforcement.  That much is reflected in
his able advocacy during four days of evidentiary hearings on the motions to suppress.  A lawyer
does not give ineffective assistance by failing to pursue every conceivable argument.  *Davila v.
Davis*, 137 S. Ct. 2058, 2067 (2017); *Chandler*, 218 F.3d at 1315 ("Counsel is not required to
present every nonfrivolous defense[.]").  Mr. Akins could reasonably have determined that issues

relating to law enforcement's stop of the vehicle, repeated interviewing of a minor without his parents present, and use of religion to obtain a confession were stronger issues than the issues Petitioner now raises. The Eleventh Circuit has specifically held that "counsel's reliance on particular lines of defense to the exclusion of others … is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." *United States v. Chandler*, 218 F.3d at 1318. Petitioner has failed to show the strategic decisions counsel made to focus on some suppression arguments to the exclusion of others was unreasonable. He has not overcome the strong presumption that Mr. Akins' performance was reasonable. *Strickland*, 104 S. Ct. at 2065 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

Moreover, each of the arguments contained within Claim I lacks merit.

In Claim I(A), Petitioner says Mr. Akins was ineffective for failing to challenge the adequacy of the *Miranda* warnings Petitioner received. Petitioner says the warnings were defective because he was not told on October 7, 2001 that he had a right to have an attorney present <u>during</u> questioning by police. He admits, however, that he was told before his second interview on October 6, 2001 about the right to have an attorney present during questioning. In *Roberts v. State*, 874 So. 2d 1225, 1228 (Fla. 4th DCA 2004), Florida's Fourth District Court of Appeals held that *Miranda* warnings which did not include advisement of the right to have an attorney present during police questioning were inadequate. In *Jackson v. State*, 921 So. 2d 772, 773 (Fla. 4th DCA 2004), however, the Fourth District Court of Appeal clarified that a *Miranda* warning did not need to explicitly include the words "during" or "while" to be adequate as long as the totality of the warnings given advised the defendant of his right to have an attorney present during interrogation. *See also Canete v. State*, 921 So.2d 687(Fla. 4th DCA 2006). Reviewing the totality of the

warnings Petitioner was given, the state post-conviction court concluded that Petitioner could not demonstrate prejudice.[6]  DE 13-26 at 25-26.  The post-conviction court also pointed out the dubiousness of finding Mr. Akins deficient for failing to make an argument that was not established in law at the time.  *Id*.  Petitioner has failed to show the post-conviction court's conclusion on this issue was contrary to clearly established Federal law or an unreasonable determination of the facts. Thus, Petitioner's argument in claim I(A) necessarily fails.

In Claim I(B), Petitioner argues trial counsel was ineffective for not moving to suppress Petitioner's statements based on law enforcement's continued questioning of Petitioner after he asked to leave the interrogation.  Petitioner says law enforcement's conduct in this regard violated his right to remain silent.  This issue was resolved in the portion of Judge McCann's Order denying Petitioner's request to have an evidentiary hearing on certain claims.  Judge McCann wrote:

> The Defendant claims that defense counsel rendered ineffective assistance by failing to file a motion to suppress the Defendant's statements to police based on a violation of the Defendant's right to remain silent.  The Defendant argues that he was not allowed to leave the interrogation when

---

[6] On this point, the state post-conviction wrote:

> In Ground II, the defendant claims his counsel rendered ineffective assistance by failing to file a Motion to Suppress the defendant's statements to police based on inadequate *Miranda* warnings.  In this case the detective told the defendant "If you decide to answer questions now without an attorney you still have the right to stop answering at any time."  This occurred on October 7, 2001, which pre-dated the decisions rendered in *Powell*, supra, and *e.g. Canete v. State*, 921 So.2d 681, 4th DCA.  If this admonition were given post-*Powell*, it may be considered deficient.  However, as the State points out, the defendant was read his *Miranda* rights on October 6, 2001 at 8:50 p.m. and was advised by Det. Dennis that he had the right to an attorney **during** questioning.  (*See* transcript of the interview of October 6, 2001, page 4, lines 3-6).  Less than 24 hours later he is read the objected to *Miranda* warnings.  Indeed, Det. Dennis did advise the Defendant he had the right to an attorney with you before questioning (transcript of October 7, 2001, page 3, lines 16-18) and still have the right to stop answering at any time (page 4, lines 23-25, page 5, lines 1-2).  Given the totality of the *Miranda* warnings that were given, even if counsel had alleged and argued this, and although this deficiency was not the law at the time, the defendant cannot demonstrate sufficient prejudice.  *See Jackson v. State*, 921 So.2d 772, 4th DCA; *Alvord v. State*, 396 So.2d 184 (Fla. 1981).  This ground is denied relief.

(DE 13-26 at 25-26.)

he asked to do so.  At the motion to suppress hearing, the court held that his pre-formal arrest statements were not illegally obtained after finding that the Defendant could stop the interrogation anytime he wanted and did stop the interrogation.  (See p. 686 of the motion to suppress transcript).  Therefore, the issue could have been raised on appeal.  Issues that either could have been, but were not, raised on direct appeal are not cognizable through collateral attack.  *Harvey v. Dugger*, 656 So.2d 1253 (Fla. 1995).

(DE 13-15 at 3-4.)  Petitioner moved for reconsideration of Judge McCann's decision.  (DE 13-16.) That request was denied on the same grounds by Judge Belanger.  (DE 13-18 at 3-4.)

Federal courts are precluded from addressing claims that are procedurally defaulted under state law.  *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993), *citing Coleman v. Thompson*, 501 U.S. 722, 734-35 & n. 1(1991); *see Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.").  Procedural default is a rule that is firmly established and regularly followed by state courts.  The Florida Supreme Court has consistently stated that "issues that could have been, but were not, raised on direct appeal are not cognizable through collateral attack."  *Harvey v. Dugger*, 656 So.2d 1253, 1256 (Fla. 1995); *see also Johnson v. State*, 593 So.2d 206, 208 (Fla. 1992) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack"); *Jones v. State*, 446 So.2d 1059, 1061-62 (Fla. 1984).  Petitioner's claim was rejected by the state post-conviction on the independent and adequate state ground of procedural default.  The state court's determination is entitled to deference.

This ground is therefore barred from review unless Petitioner can establish an exception to the procedural bar exists.  To overcome a procedural bar, a petitioner must demonstrate either (1) an adequate cause for and actual prejudice arising from the default, or (2) "that a miscarriage of justice, caused by a substantial denial of constitutional rights, will occur" if the petitioner's federal claims are not considered.  *Owen v. Secretary*, 568 F.3d 894 (11th Cir. 2009).  Petitioner fails to

show either exception.  He claims he suffered a miscarriage of justice, DE 17 at 7, but bare and conclusory allegations are insufficient.  Petitioner fails to make the showing required to overcome the procedural bar.

In addition, Claim I(B) is meritless.  Petitioner went to the police station twice on Saturday October 6, 2001. Both times he was free to leave after the interview and did in fact leave the police station.  (DE 14-2 at 117; 14-5 at 17-18; 14-4 at 83, 89-90).   On October 7, 2001, however, Petitioner was not free to leave because divers had found the firearm Petitioner threw in the river. Det. Dennis testified that she believed at that point that she had probable cause to arrest him for burglary and intended to do so.  (DE 14-4 at 98-99).  Thus, regardless of his requests, Petitioner was not free to leave the police station on October 7, 2001. In ruling on the motion to suppress, the state court agreed with this assessment – Petitioner was not free to leave the police station on October 7, 2001.  (DE 14-6 at 99).  He was in custody.  That in-custody status did not render police questioning unlawful, however, because Petitioner was read his *Miranda* rights and agreed to speak with law enforcement.  So long as his *Miranda* waiver and statements were voluntarily made, there was nothing illegal about police questioning him after he asked to leave the interrogation room.  *See Illinois v. Perkins*, 496 U.S. 292, 297 (1990) (*Miranda* warnings must be given when a suspect is in custody and subject to police interrogation in order for statements made by the suspect to be admissible at trial).  Counsel was not deficient in failing to move to suppress on this basis because there is no duty to raise non-meritorious issues.  *See Broderick v. United States*, 2020 WL 6280808, at *1 (11th Cir. Aug. 13, 2020) (citing *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001)); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) (same); *United States v. Hart*, 933 F. 2d 80, 83 (1st Cir. 1991) (explaining that counsel is not required to waste the court's time with futile or frivolous motions). Counsel's decision to focus instead on the

*voluntariness* of Petitioner's statement and waiver was reasonable.  The voluntariness issue was fully litigated at the motion to suppress phase and on appeal.  It cannot now be re-litigated under the guise of an ineffective assistance of counsel motion.

Petitioner also says trial counsel was deficient for not reviewing all of the interview videos in their entirety.  (DE 17 at 6).  This claim is rejected for several reasons.  First, it is a newly raised issue that was not fairly presented to the state courts in Petitioner's 3.850 motion.  Therefore it is not exhausted and is barred from review in this federal court. Moreover, the claim that counsel did not adequately review the recordings is refuted by the record.  The record shows trial counsel was extremely familiar with the circumstances surrounding Petitioner's statements and confession to the police.  During the suppression hearing, Mr. Akins skillfully cross-examined multiple law enforcement officers in detail about their interrogation of Petitioner.  Several times when the officers could not remember specific information, Mr. Akins was able to remind them of exactly what happened during the interrogation, demonstrating a detailed knowledge of the transcripts and recordings.  (DE 14-5 at 27-28, 40-41, 102-106).  Petitioner points to Mr. Akins' testimony ten years later at the 3.850 hearing that he did not review "<u>all</u> of the audiotapes and <u>all</u> of the videotapes in their <u>entirety</u>" as evidence that Mr. Akins' review of the recordings was inadequate.  (DE 14-1 at 77).  This Court is not persuaded.  Although Mr. Akins did not compare the transcript versus the tape "in real time," he reviewed the transcripts and, if a portion "peak[ed] his interest" or if he needed to "get clarification" of what was said, he would find that segment of the recording and compare it to the transcript.  (*Id*. at 82).  That is a reasonable approach.  The recordings in this case were lengthy (approximately twenty hours in total), and some portions were inaudible even after being digitally enhanced.  (DE 14-5 at 78-79).  Other portions of the tapes contained no questioning at all because Petitioner was alone and/or sleeping in the interrogation room. ( DE 14-6 at 100).

In light of these circumstances, counsel's performance in not watching all of the videotapes and listening to all of the audiotapes was not outside the wide range of professional competence and did not fall below an objective standard of reasonableness.  Thus, even if Petitioner had raised this issue in his 3.850 motion (which he did not), it would not be meritorious.  Claim I(B) should be denied.

In Claim I(C), Petitioner contends that counsel was ineffective for failing to advise Petitioner of his right to testify at the suppression hearing and call Petitioner as a witness. Regarding this issue, the state post-conviction court held:

> In Ground V, the defendant claims his trial counsel rendered ineffectiveness by failing to advise the defendant he could testify at the Motion to Suppress. In resolving this claim, this Court must candidly acknowledge, it is very difficult for this Court to believe that an attorney as experienced as Mr. Akins was did not tell his client he could testify at an evidentiary Motion to Suppress his statements in a case where he is indicted for two counts of First Degree Murder, Robbery with a Firearm, Armed Burglary and Grand Theft and strains his credibility.  The same can be said of the defendant's testimony about this.  To accept the defendant's testimony, this Court would have to conclude the defendant had no idea he could testify in Court at such an important hearing.

> Notwithstanding this, even if arguendo, this Court accepts all this as true, and because it was unrebutted, the Court considered carefully the defendant's testimony at the FRCP 3.850 hearing.  Even if this testimony were presented this Court concludes it would not have changed the trial court ruling when considering the totality of the circumstances by a preponderance of the evidence standard.  In addition to determine this claim, this Court would have to engage in speculation to decide if Judge Geiger would have changed his opinion.  Speculation cannot be the basis for relief. *See Jones v. State*, 845 So.2d 55 (Fla. 2003).  This ground is denied relief.

DE 13-26 at 26-27.

The undersigned agrees with the post-conviction court's analysis.  *Strickland* requires Petitioner to show (1) his counsel was deficient and (2) he suffered prejudice.  Regarding the first prong, a defendant unquestionably has a constitutional right to testify at trial.  *Rock v. Arkansas*,

483 U.S. 44, 49 (1987); *United States v. Teague*, 953 F.2d 1525, 1526 (11th Cir. 1992) (*en banc*). This right is personal to the defendant and cannot be waived by trial counsel or the trial court. *Teague*, *supra*; *Brown v. Artuz*, 124 F.3d 73, 77-78 (2d Cir. 1997). It is not clear, however, that this right extends to pretrial evidentiary proceedings such as a suppression hearing. The Supreme Court has not decided this issue and several district courts, in this district and elsewhere, have expressed the opinion that a defendant does not have a constitutional right to testify at a pretrial evidentiary proceeding. *Witten v. United States*, 2019 WL 4453624 (S.D. Fla. Mar. 7, 2019); *Liberal v. United States*, 2011 WL 4055404 (S.D. Fla. June 7, 2011); *Narvaez v. United States*, 1998 WL 255429 (S.D.N.Y. May 19, 1998). This Court need not decide the issue, however; it is sufficient that the Supreme Court has not done so. As such, the post-conviction court's denial of Petitioner's ineffective assistance claim – which is based on the existence of a right to testify at a suppression hearing – cannot be said to be contrary to or an unreasonable application of Supreme Court case law.

Regarding the prejudice prong, as noted by the post-conviction court, even assuming counsel erred, Petitioner has not established that his testimony would have changed the outcome of the motion to suppress. If given the opportunity to testify at the suppression hearing, Petitioner says he would have explained his lack of experience with the criminal justice system, told the court that he did not understand his *Miranda* rights, and told the court that he asked to leave the interrogation room repeatedly to no avail. (DE 1 at 29). Petitioner says he would have described "what he was thinking and feeling at the time of his interrogations, the context, tone, and duration of the sessions, the toll law enforcement's conduct took on his thought processes, and the psychological impact of the interrogations." *Id*. Much of that testimony, however, is cumulative of evidence already before the trial court. (DE 14-6 at 81-110). The trial court heard evidence of

what occurred during the interrogations, including testimony from all of the officers involved. *Id.* The trial court reviewed copies of the transcripts and recordings, which revealed the context, tone and duration of the sessions. *Id.* The trial court knew Petitioner was a minor who did not have significant prior experience with the criminal justice system or *Miranda* warnings. *Id.* The trial court knew Petitioner's parents were not present during the interviews. *Id.* Petitioner's testimony would have added nothing on these issues. The only additional information Petitioner could have added was about his internal thought processes and subjective state of mind. Petitioner's state of mind, however, is immaterial without some indication of police misconduct. *United States v. Orozco Ramirez*, 2019 WL 2165920 (N.D. Ga. Apr. 22, 2019); *see also Colorado v. Connelly*, 489 U.S. 157, 167 (1986) ("[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process clause of the Fourteenth Amendment."). Thus, the post-conviction court is correct that Petitioner's testimony would not likely have produced a different outcome on the motion to suppress. The post-conviction court's rejection of Claim I(C) is not contrary to or an unreasonable application of law and is not based on an unreasonable finding of fact. As such, Claim I(C) should be denied.

In Claim I(D), Petitioner alleges trial counsel was ineffective for failing to show the entire video recording to the jury pursuant to FL ST § 90.108 (the "Rule of Completeness"). The post-conviction court stated:

> Ground VII and VIII allege ineffectiveness for failing to have the entire videotape of the defendant's confession into evidence and cumulative error respectively. It was not proven to this Court as to how playing approximately eight hours of the defendant's statements and/or denials would have met either prong of *Strickland*, especially in light of the evidence presented against the defendant. Therefore, this ground is denied relief.

DE 13-26 at 28.

There is nothing unreasonable about the post-conviction court's conclusion. The recordings of Petitioner's statements to police over October 6 and October 7, 2001 are approximately twenty hours long, according to the State. The videotape of Petitioner's interrogation on October 7, 2001 is itself approximately eight hours long. A trial court would not likely have published these recordings to the jury in their entirety since certain portions were inaudible and/or irrelevant. Further, Petitioner fails to establish how the rule of completeness even applies in this context. Under FL ST § 90.108 (1), "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him or her at that time to introduce any other part or any other writing or recorded statement <u>that in fairness ought to be considered contemporaneously</u>." FL ST § 90.108 (1) (emphasis added). The rule's purpose is "to avoid the potential for creating misleading impressions by taking statements out of context." *Kitchings v. State*, 291 So.3d 181, 189 (Fla. 4th DCA 2020) (internal quotations omitted); *Pulcini v. State*, 41 So. 3d 338, 348 (Fla. 4th DCA 2010) ("Under this rule, once a party 'opens the door' by introducing part of a statement, the opposing party is entitled to contemporaneously bring out the remainder of the statement in the interest of fairness."). Here, Petitioner's argument is not that the portions of video shown at trial took his statements out of context, but rather that the jury did not see the full conditions of his interrogation. He therefore fails to demonstrate how Florida's rule of completeness applies. *See Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (explaining that the failure to raise a meritless objection is not deficient performance); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) (failure to raise non-meritorious issues does not constitute ineffective assistance of counsel). *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.").

Petitioner also fails to show any likelihood that watching the entire recording would have changed the jury's verdict in light of the strength of the State's case. The State's evidence included testimony from an eyewitness who saw a man resembling Petitioner run from the crime scene wearing clothes that matched what Petitioner wore to school that day; testimony from another eyewitness who saw Petitioner throw the murder weapon into a river the day after the homicides; testimony from another witness who said Petitioner had previously made statements indicating a plan to steal a firearm which turned out to be the murder weapon; a shirt taken from Petitioner's home that had one of the victim's blood on it; a large sum of money missing from the other victim while Petitioner gave his mother $700 on the day of the murders; and Petitioner's confession that he killed two people. In addition, Petitioner testified to the jury, which heard and apparently rejected his story that he was taking the "rap" for someone else. Petitioner has failed to identify anything in the video recording that would have changed the weight of this evidence or the jury's determination. As a result, he has not established entitlement to § 2254 relief on this claim.

### *Claim II*

In Claim II, Petitioner claims he received ineffective assistance of counsel because Mr. Akins failed to retain a blood spatter expert to forensically analyze the blood evidence in this case. (DE 1 at 37). He contends that such an expert would have corroborated his theory that he was not the shooter based on an analysis of the blood spatter in the car and on the clothing Petitioner was wearing at the time. Such analysis would have addressed how the lack of blood spatter found on his clothing was inconsistent with the idea that he was in the car with the victims when the shootings occurred. Petitioner says he was unable to prove he was not the shooter without the

testimony and analysis of a blood spatter expert.  Petitioner raised this claim in his Rule 3.850

Motion for post-conviction relief in state court.  DE 13-12 at 4.[7]

The State responds that counsel's decision not to call a blood spatter expert was strategic

because under Florida's Rules of Criminal Procedure, if Petitioner presented no witnesses other

than himself, his lawyer was entitled to make both initial and rebuttal closing arguments. DE 13-

13, 13-17.  Calling a blood spatter expert would have forfeited that advantage.  The State also says

Petitioner was not prejudiced by not having a blood spatter expert because Mr. Akins cross-

examined the State's blood spatter expert, Dan Nippes, and obtained numerous concessions from

Mr. Nippes, including the fact that Nippes was surprised not to see blood spatter on Petitioner's

shirt.  The State also says Petitioner was not prejudiced because his conviction was based on much

more than blood spatter evidence; the jury heard from eye witnesses who saw Petitioner run from

the scene and throw the murder weapon into a river, a detective who heard Petitioner's confession,

and Petitioner's own testimony which the jury evidently disbelieved.

At the 3.850 evidentiary hearing, Petitioner proffered testimony from forensic expert Stuart

James, who reviewed, among other things, a video recording and photographs of the crime scene,

autopsy photos of both victims, and the trial testimony of the State's blood spatter expert, Mr.

Nippes.  (DE 14-1 at 24-65).  Although Mr. James did not review a photograph of Petitioner's shirt

or see the shirt itself, he reviewed Nippes' trial testimony that there were blood transfer stains only,

---

[7] Petitioner initially argued that "[t]rial counsel was ineffective for failing to call a qualified forensic expert to give opinion testimony at trial."  DE 13-12 at 4.  The trial judge summarily dismissed this claim as factually deficient, DE 13-15, but, upon motion, granted Petitioner leave to amend this claim.  *See* DE 13-18 at 1-2.  Petitioner's amended claim was that "trial counsel was ineffective for failing to investigate and obtain a qualified forensic expert in support of the defense at trial in the area of blood splatter analysis."  DE 13-16 at 15. The State filed two responses to Petitioner's blood spatter expert claim.  DE 13-13, 13-17.

and not blood spatter on Petitioner's shirt.[8]  Like Nippes, Mr. James found that surprising given

the State's version of how the murders occurred.  However, Mr. James "[could]n't say for sure"

how the blood got on Petitioner's shirt.  DE 14-1 at 47.

The post-conviction court found Petitioner had not met either prong of *Strickland*, and

denied relief based on the blood spatter expert claim.  DE 13-26.[9]  The court found that the

testimony offered by Mr. James either did not support Petitioner's theory that he was not the

shooter or was speculative.  In light of the other evidence presented to the jury, the trial judge

declined to base relief on Mr. James' speculative testimony.

Petitioner has not demonstrated that the state post-conviction court's decision was contrary

to clearly established Federal law or based on an unreasonable determination of the facts.  *See*

*Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the

correctness per se, of the state court decision that we are to decide.").  The state court correctly

identified *Strickland* as the controlling law on Petitioner's ineffective assistance of counsel claim.

DE 13-26 at 24; *see Duran v. Walker*, 223 F. App'x 865, 874 (11th Cir. 2007).  The court

considered Mr. James' testimony and found it did not provide sufficient support for Petitioner's

---

[8] Mr. James testified that a transfer stain is produced when a non-bloody surface comes in contact with an object or surface that has wet blood on it.  DE 14-1 at 45.  The resulting transfer blood stain was manually created, through an action such as rubbing or smearing.  In contrast, blood spatter stains occur when airborne blood lands on an object or surface.  *Id. See also* DE 14-8 at 132 (Mr. Nippes' trial testimony regarding transfer versus splatter stains).  Petitioner argues that the lack of blood spatter on his shirt supports his theory that he was not the shooter because the victims were shot at close range and blood spatter flew backwards into the back seat of the car where the shooter was located.  DE 13-12 at 4.  *See also* DE 14-8 at 137-38 (Mr. Nippes' trial testimony regarding the blood spatter that results from close-range shots).  Petitioner's theory is that when he jumped out of the car as the shooting began, some blood spatter ended up on his arm or hand, which then was transferred to his shirt as he ran away from the scene.  DE 13-12 at 4-5.

[9] On October 13, 2015, the trial judge ruled on Petitioner's Rule 3.850 Motion.  DE 13-20.  The decision, however, failed to make specific findings and conclusions as to two of Petitioner's claims for relief, one of which was his blood spatter expert claim.  Rather, the decision simply recounted the testimony relevant to the claim that presented at the evidentiary hearing on Petitioner's Rule 3.850 Motion.  After the decision was appealed, the State moved the appeals court to relinquish jurisdiction so that the trial judge could enter a ruling on all remaining post-conviction claims.  DE 13-22.  After the matter was relinquished back, DE 13-25, the trial judge entered an amended Order on Petitioner's Rule 3.850 Motion.  DE 22-26.

theory of the case such that either prong of *Strickland* was met by the failure to present it at trial. This Court agrees. Regarding counsel's performance, which witnesses to call, if any, is "the epitome" of a strategic decision that will seldom be second guessed. *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004). Further, even assuming, *arguendo*, that Mr. Akins' decision was not tactical one,[10] Petitioner did not suffer prejudice. To establish prejudice based on the failure to consult and call an expert witness, Petitioner must identify a witness that was available to and would have testified, establish the content of the witness's proposed testimony, and show a "'reasonable probability' that the uncalled witnesses would have made [a] difference to the result." *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). *See Jones v. McNeil*, 2009 WL 1758740, at *7 (S.D. Fla. June 22, 2009) ("[E]ven if counsel's performance could be deemed deficient as alleged, Jones has not demonstrated that the neglect or omission by counsel caused him to suffer prejudice as . . . there is no indication that the results of the proceeding would have been different had counsel . . . retained a defense expert."). The post-conviction court noted that Mr. James' testimony primarily criticized the collection and documentation of forensic evidence in this case. DE 13-26 at 24-25. It is difficult to see how those criticisms would have changed the outcome of Petitioner's case given all of the evidence against him. In addition, Mr. James' testimony that the lack of blood spatter on Petitioner's shirt was surprising is information the jury already had because Mr. Akins elicited it from the State's expert, Dan Nippes, on cross-examination. Thus, Mr. James testimony at trial would have been cumulative in that regard. Petitioner has failed to show how the state

---

[10] At the 3.850 hearing, Mr. Akins testified that he discussed retaining an expert with his supervisor, Mr. Harllee, who asked jokingly why they would do that since the client was guilty. DE 14-1 at 105-06. Mr. Akins indicated he thought the issue with hiring an expert was financial or political because doing so would have been funded by the county. *Id.* Mr. Harllee did not recall any conversation about hiring a blood spatter expert. *Id,* at 290.

court's conclusions on this claim are so unreasonable as to warrant federal habeas relief.  The state court's resolution of the issues raised in Claim II should not be disturbed.

### *Claim III*

Petitioner alleges in Claim III that the cumulative errors of trial counsel deprived him of due process of law and a fair trial (DE 1 at 39).  Claims found to be without merit, however, cannot be aggregated to show denial of a constitutional right.  *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012).  Because the Petitioner's ineffective assistance of trial counsel claims individually lack merit, then by extension they lack merit cumulatively.  Claim III should be denied.

### **EVIDENTIARY HEARING**

A federal court must consider an evidentiary hearing if such a hearing could enable a habeas petitioner the opportunity to prove factual allegations, which, if true, would confer the right to habeas relief.  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  The decision whether to grant an evidentiary hearing is left to this Court's discretion. This Court must review the available record and determine whether an evidentiary hearing is warranted. To guide the determination, the Eleventh Circuit directs this Court to consider four factors. First, this Court must consider whether there are disputed facts concerning the Petitioner's claims for which the Petitioner did not receive a full and fair hearing from the state post-conviction court. Second, this Court must consider whether the Petitioner's fact allegations, if he could prove them true, would entitle him to prevail on his Petition. Third, in making that determination of whether the Petitioner can prevail on the merits of his claims, this Court must keep in mind the deference that § 2254 gives to the state post-conviction court's ruling. Fourth, this Court must consider the nature of the Petitioner's fact allegations. If they are merely conclusory and unsupported by specifics, the evidentiary hearing

request may be denied. *See Boyd v. Allen*, 592 F.3d 1274, 1304-05 (11th Cir. 2010). The present record presents no disputes of fact that require resolution.  This Court was able to assess Petitioner's claims based on the record as it is without the need to develop it further.  Thus, Petitioner's request for an evidentiary hearing is denied.

## CONCLUSION

The record shows that the Petitioner received the full benefit of a jury trial where he was able to challenge the State's case against him and to proffer conflicting and exonerating evidence. Even if there were ways his trial counsel could have presented his defense better (viewed, of course, with the benefit of hindsight and with knowledge of the jury's decision), the record does not show how any of those potential shortcomings constitute ineffective assistance as *Strickland* defines it. Even if there were ways that trial counsel could have done a better job, none of those complained-of errors detract from the strength of the State's case-in-chief. Because the Petitioner cannot demonstrate how the complained-of errors would have resulted in a more favorable outcome, he does not prevail on his claims for relief. Moreover the Petitioner does not overcome the deference given to the state court's determinations on § 2254 review and the deference given to trial counsel under *Strickland.*

**ACCORDINGLY**, this Court recommends to the District Court that the Petition for Writ of Habeas Corpus (DE 1) be **DENIED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Donald M. Middlebrooks, the United States District Judge assigned to this case.  Failure to file timely objections shall bar the parties from a de novo determination by the District Court of the issues covered in this Report and Recommendation and bar the parties from attacking on appeal the factual findings contained

herein.  *LoConte v. Dugger*, 847 F.2d 745, 749—50 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988).

     **DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this   1st   day of February, 2021.

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE

33 of 33